No. 12457

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

JAMES HAM, M.D. and RICHARD WILLIAM
KRANSKY and CLAUDIA ANN KRANSKY,
husband and wife, et al.,

                Plaintiffs and Appellants,

-vs-

HOLY ROSARY HOSPITAL, a Montana
Non-profit corporation,

                Defendants and Respondents.

---

Appeal from:  District Court of the Sixteenth Judicial District,
                Honorable C. B. Sande, Judge presiding.

Counsel of Record:

    For Appellants:

        Robert L. Stephens, Jr., argued, Billings, Montana

    For Respondents:

        Crowley, Kilbourne, Haughey, Hansen and Gallagher,
         Billings, Montana
        Stephen H. Foster, argued, Billings, Montana

---

                Submitted: November 13, 1974

            Decided: DEC 11 1974

Filed: DEC 11 1974

Thomas J. Kearney
                  Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal by the plaintiffs from an order of the district court, County of Custer, granting defendant's motion for summary judgment.

Plaintiffs filed suit in the United States District Court, District of Montana, on December 1, 1972, seeking an order compelling Holy Rosary Hospital to permit to permit James Ham, M.D., to surgically sterilize Claudia Ann Kransky in that hospital on December 13, 1972, when she was scheduled to deliver her third child by cesarean section. The complaint alleged the hospital, in refusing to permit its facilities to be used for surgical sterilization, was infringing upon rights secured to plaintiffs by the United States Constitution. The court dismissed the case on December 8, 1972, for want of jurisdiction. An opinion was subsequently issued explaining that the court found no state involvement in the hospital's enforcement of its sterilization rules and therefore the court lacked jurisdiction under 28 U.S.C. § 1343. No appeal was taken from that decision.

Plaintiffs then filed their complaint in this action on December 11, 1972, seeking the same relief from the district court. On December 12, 1972, the court granted a temporary injunction restraining the hospital from enforcing its sterilization rules insofar as Mrs. Kransky was concerned.

Thereafter, on December 15, 1972, summary judgment was entered on the merits in favor of the hospital. In the interim, the sterilization was performed on Claudia Kransky. Although the case may be moot as to Mrs. Kransky, the issues remain with respect to Dr. Ham and members of the class to which the named plaintiffs belong.

Plaintiff Claudia Ann Kransky at all times material to the issues was twenty-two years of age and married to plaintiff Richard Kransky. She is a resident of Miles City, Custer County, Montana, and a citizen of the United States. She had, prior to the instant

pregnancy, a medical history of two prior cesarean sections. Following consultations with her attending physician, Dr. Ham, it was determined by plaintiffs that Mrs. Kransky should have a tubal ligation performed contemporaneously with her third scheduled cesarean section. For a number of personal reasons Mr. and Mrs. Kransky determined they did not desire additional children. The sole purpose of the proposed tubal ligation was contraception. Excepting the customary and usual residual effects of three cesarean sections and the desire to avoid future pregnancies, Mrs. Kransky had no medical indication for permanent sterilization.

Defendant Holy Rosary Hospital is a nonprofit Montana corporation. The members and corporate board of the corporation are members of the congregation of Presentation Sisters of Aberdeen. Presentation Sisters of Aberdeen is a religious congregation of sisters organized pursuant to authorization of the Roman Catholic Church. The corporate board, however, has delegated primary responsibility for control and administration of Holy Rosary Hospital to a board of trustees comprised of seven members of the Presentation Sisters of Aberdeen and four lay members. The hospital's physical facilities at Miles City are owned by defendant Holy Rosary Hospital.

Originally established in 1906, Holy Rosary Hospital was re-built in 1950. The total cost of the physical facilities at that time was $1,560,500, of which approximately $77,600 was voluntarily contributed by individual citizens of the community following an appeal to the public at large.. In 1958, Holy Rosary Hospital received the benefit of approximately $70,000 voluntarily contributed by citizens of the community following an appeal to the public for funds to assist in operating the hospital. Except for these two fund drives the hospital has made no appeal to the public for voluntary contributions. It does receive unsolicited memorials and contributions from time to time of approximately $2,000 per year. Members of the Presentation Sisters have contributed services valued in excess of $796,000 to the operation of the hospital since its

- 3 -

inception. At no time has the hospital received any funds under the Hill-Burton Act (42 U.S.C. §291 et seq.) or any other grants from city or county governments, the state of Montana, or the United States government for construction of physical facilities, purchase of equipment, or operation of the hospital.

Holy Rosary Hospital serves an area in southeastern Montana including the counties of Garfield, Fallon, Carter, Prairie, Rosebud and Custer. It is the only hospital in Miles City and has facilities for cesarean sections and postpartum care. With the same area, there are also hospitals located at Jordan, Ekalaka, Baker, Forsyth, and Glendive. Of these hospitals, only those in Forsyth and Glendive have facilities for performing cesarean sections and postpartum care. Forsyth is 46 miles and Glendive is 76 miles distant from Miles City. Plaintiff James Ham is admitted to full staff privileges to practice in and use the hospital in Forsyth.

Tubal ligation is a medically accepted surgical procedure for female sterilization. It has not been performed at Holy Rosary Hospital because of the interpretation placed upon the publication "Ethical and Religious Directives for Catholic Hospitals" which is incorporated by reference in the bylaws of the medical staff of Holy Rosary Hospital. Holy Rosary Hospital had not adopted any guidelines for sterilization procedures except as provided by the Ethical and Religious Directives for Catholic Hospitals, nor has the defendant created a sterilization committee to review requests for sterilization.

By letter dated July 11, 1972, Mrs. Kransky requested permission from the hospital for the sterilization procedure at the time of the cesarean section. This request was considered by the Board of Trustees. The administrator of the hospital replied by letter dated September 15, 1972, explaining that sterilization was prohibited by the Ethical and Religious Directives for Catholic Hospitals. Holy Rosary Hospital has expressed no other reasons for denying the tubal ligation. There are no formal appeal procedures from decisions

- 4 -

of the Board of Trustees relating to applications for sterilization.

Plaintiff, James Ham, M.D., is a physician specializing in obstetrics and gynecology in Miles City. Outside of the Billings area, Dr. Ham is the only OB-Gyn specialist in the eastern Montana area. As a condition to admission to staff privileges, Dr. Ham has consented to, and agreed to be bound by, the medical staff bylaws of Holy Rosary Hospital. Holy Rosary Hospital requires its medical staff to abide by the medical staff bylaws, the principles of medical ethics of the American Medical Association, and the Ethical and Religious Directives for Catholic Hospitals insofar as they relate to a physician's services within Holy Rosary Hospital.

Holy Rosary Hospital is subject to state regulation and control in accordance with Title 69, Chapters 52 and 53, Revised Codes of Montana, 1947, and is licensed annually by the state of Montana upon proper application by the hospital. In addition, the hospital is subject to the regulations for hospitals and related institutions promulgated by the Montana Department of Health and Environmental Sciences. The hospital has had the benefit of general exemptions from taxation as provided by sections 84-202 and 84-1501, R.C.M. 1947, for nonprofit corporations organized for charitable, scientific, religious or educational purposes. The hospital has also been paid with public funds for services rendered to eligible patients under state and federal welfare, medicare and medicaid programs.

In their argument and brief, plaintiffs have raised a number of federal constitutional issues. However, as a condition precedent to the consideration of those issues, this Court must first find that the actions of the hospital involve state action prohibited by the federal constitution. We hold, as did the federal district court, that the actions of defendant Holy Rosary Hospital are merely private conduct, not state action, and are thus not proscribed by the Constitution. Finding no state action, we do not reach plaintiffs' main issues. In addition, this action, as to the constitutional issues, is barred by the application of the doctrine of res

judicata. Plaintiffs also claim that the hospital's actions violate section 69-5217(1), R.C.M. 1947. We hold there has been no violation of that statute.

In support of their allegation that state action is involved in Holy Rosary Hospital's decision to forbid the use of its facilities for voluntary sterilization, plaintiffs present several facts which they claim lead to that conclusion: (1) the hospital's use of "public" funds derived from its public appeals for contributions; (2) the hospital's submission to regulations prescribed pursuant to the state's participation in other Hill-Burton projects; (3) the hospital's monopoly position in the Miles City area; (4) the hospital's subjection to state licensing and regulation; (5) the operation of a hospital is per se a public function; and (6) the hospital's preferred position under state law due to its tax exemption status. We find none of these facts, either individually or taken together, to be sufficient to warrant a finding that the actions of Holy Rosary Hospital, a private corporation, constitute state action subject to constitutional limitations. Since the parties and the issues were the same, we adopt and quote from the unreported opinion of Judge Russell E. Smith, dated December 20, 1972, Civil No. 1103, United States District Court for the District of Montana, Billings Division:

> "It is not disputed that the 14th amendment 'erects no shield against merely private conduct however discriminatory or wrongful.' Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961); Moose Lodge No. 107 v. Irvis, 407 U.S. 163 (1972). Holy Rosary Hospital is a private person and unless the state has 'significantly involved' itself with the claimed discrimination there is not state action and the court has no jurisdiction. Moose Lodge No. 107 v. Irvis, supra.
>
> " * * *
>
> "Under controlling decisions (Moose Lodge No. 107 v. Irvis, supra) the court is required to sift the facts and weigh the circumstances to determine whether in a given case there is a non-obvious involvement of the state in private conduct. * * *
>
> "As I independently weigh and sift the facts and circumstances here I am unable to conclude that there is any significant relationship between the state and the action

- 6 -

here sought to be enjoined. It does not appear that the tax benefits or the state patronage enjoyed by Holy Rosary Hospital are dependent upon the enforcement of a sterilization policy. Were that so, a different problem would be presented, but the receipt of tax benefits alone is not sufficient to make the action of the beneficiary the action of the state. Browns v. Mitchell, 409 F.2d 593 (10th Cir. 1969); Blackburn v. Fisk University, 443 F.2d 121 (6th Cir. 1971). The State of Montana has not by statute or regulation attempted to prohibit or regulate operations resulting in the sterility of noncustodial males and females.

"It is urged that Holy Rosary Hospital has assumed a public function and may not in the exercise of such function restrict the fundamental rights of citizens. The cases in support of this proposition are analyzed in the case of Powe v. Miles, 407 F.2d 73 (2d Cir. 1968) and the rule stated in them was held to be inapplicable to private schools incorporated under state law, regulated by state law, and aided to some extent by state funds. What is said in Powe v. Miles, supra, with respect to private schools is equally applicable to private hospitals. In fact, state supported and managed education in America at all levels for many years has been a more common thing than state supported and managed hospitals.

"The fact that Holy Rosary Hospital has a practical, but not state-enforced, monopoly in obstetrical services in Miles City does not make its action state action. Martin v. Pacific Northwest Bell Telephone Company, 441 F.2d 1116 (9th Cir. 1971)."

We will discuss briefly two of the factual bases, not discussed in Judge Smith's opinion, which plaintiffs here urge require the conclusion that the hospital's decision to forbid the use of its facilities for voluntary sterilization constitutes state action. Plaintiffs' contention that the hospital's use of "public funds" derived from its public appeals for contributions constitutes state action is without merit. The fact that the appeal was to the public at large is immaterial to a finding that the power of the state is involved in the operation of the hospital. At no time have funds derived from the state been used in a legal sense in the operation of Holy Rosary Hospital.

Plaintiffs' contention that the hospital's subjection to state licensing and regulation constitutes state action was answered in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L ed 2d 627, 639. There, the United States Supreme Court held that the mere licensing of Moose Lodge to serve liquor by the Pennsylvania Liquor Control Board did not amount to such state involvement with the club's activities as to make its discriminatory practices forbidden by the Fourteenth Amendment. With respect to state regulation, the court said:

- 7 -

"However detailed this type of regulation may be in some particulars, it cannot be said to in any way foster or encourage racial discrimination. Nor can it be said to make the State in any realistic sense a partner or even a joint venturer in the club's enterprise."

In the instant case, the regulation of hospitals prescribed pursuant to Chapters 52 and 53, Title 69, R.C.M. 1947, cannot be said to in any way foster or encourage a decision by the hospital on the subject of sterilization. At most, section 69-5223, R.C.M. 1947, set forth later in this opinion, merely lets the decision rest with the hospital, free from any state coercion either way. Neither can it be said that these regulations in any realistic sense make the state of Montana a partner or joint venturer in the hospital's decision to forbid voluntary sterilizations within the walls of its facility.

We now consider the issue of whether the argument of plaintiffs, that the hospital is violating plaintiffs' federal constitutional rights by refusing to permit sterilization operations, must be rejected because the order dismissing the federal court action is res judicata on that issue. In 28 U.S.C. § 1343, Congress granted the federal district courts jurisdiction to enforce the Fourteenth Amendment. The jurisdiction conferred by that section is restricted to cases where the defendant has acted "under color of any State law, statute, ordinance, regulation, custom or usage." Whether there is "color of State law" for purposes of § 1343 and whether there is a "significant involvement of the state in private conduct", i.e. "state action", for Fourteenth Amendment purposes are identical questions. See: Moose Lodge v.Irvis, supra; United States v. Wiseman, 445 F.2d 792 (2d Cir. 1971); Hall v. Garson, 430 F.2d 430, 439 (5th Cir. 1970).

Attempting to invoke jurisdiction under 28 U.S.C. § 1343 plaintiffs alleged in their federal court complaint that the hospital, acting under color of state law, was infringing upon rights secured to them by the United States Constitution. Based upon stipulated facts virtually identical to those in the instant case, Judge Smith

- 8 -

dismissed the case for lack of jurisdiction, holding, contrary to the allegations of the complaint, that the hospital was not acting under color of state law.

Plaintiffs in their brief here return to the same issues involved in the federal court case and argue at length that the hospital's sterilization prohibition infringes upon rights secured to them by the First, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution. Since these Amendments restrict only state action and not purely private action, this argument again raises the issue of whether or not the state is "significantly involved" in the hospital's prohibition against sterilization. Judge Smith ruled against plaintiffs on this precise issue and his ruling is conclusive here.

The general rule respecting the conclusive effect of a dismissal for lack of jurisdiction on grounds material to the merits of the cause is stated in the Annotation, 49 ALR2d 1036, 1068 (1956):

> "In some situations a decision on the jurisdiction of a court may depend upon questions of fact which are also material in determining the merits of the cause of action. The weight of the cases, expressly or by inference, supports the rule that where a question of fact material to the merits has been decided by and is essential to a judgment for defendant based on lack of jurisdiction, such determination is conclusive upon the parties in a subsequent action either for the same or a different cause of action."

The applicability of this rule in the instant case cannot be questioned. Significant state involvement in the hospital's sterilization rules is essential not only to the federal court's jurisdiction but also to the merits of the claim that the hospital is denying plaintiffs their constitutional rights.

The parties here are the same as were before the federal court; the subject matter is the same as was before the federal court; the issue of state action is the same and relates to the same subject matter; and, the capacities of the parties are the same. Consequently, Judge Smith's finding that there is no state

participation in the hospital's rules against sterilization is conclusive, and precluded a ruling here that such rules are subject to Fourteenth Amendment restrictions. Smith v. County of Musselshell, 155 Mont. 376, 378, 472 P.2d 878, 879.

Plaintiffs claim that the hospital's sterilization rules violate section 69-5217, R.C.M. 1947. That statute provides in pertinent part:

"(1) No person who operates a facility may discriminate among the patients of licensed physicians. The free and confidential professional relationship between licensed physician and patient shall continue and remain unaffected. Physicians shall continue to have direction over their patients."

The actions of Holy Rosary Hospital did not violate section 69-5217. There is no discrimination among patients. All patients are alike subject to the hospital's rule prohibiting sterilizations to be performed within the hospital. As a private hospital, which voluntarily initiated and voluntarily provides these hospital factilities, Holy Rosary Hospital has a legal right to prescribe the terms upon which it furnishes its services to the public so long as it does not discriminate against some patients in providing those services. The confidential relationship between physician and patient is unaffected. The relationship which these rules affect is that between the hospital and the physician or the hospital and the patient. The free and confidential relationship between patient and physician was never intruded upon by Holy Rosary Hospital. Plaintiffs were at all times free to choose another facility, albeit inconvenient, for the tubal ligation.

The last sentence of section 69-5217, R.C.M. 1947, heretofore quoted, does appear to create some difficulty however. The sentence is ambiguous in that it may mean either (1) the physician has exclusive direction over his patient to the extent that he can totally disregard reasonable rules and regulations of a private hospital, or it may mean (2) that the physician has exclusive direction over his patient subject to reasonable rules and regulations of a private hospital. Although not enacted when this

suit commenced, the legislature has subsequently enacted a statute which clarifies this ambiguity with respect to the issue at hand. Section 69-5223, which became effective March 21, 1974, provides in part:

> "(1)  No private hospital or health care facility shall be required contrary to the religious or moral tenets or the stated religious beliefs or moral convictions of such hospital or facility as stated by its governing body or board to admit any person for the purpose of sterilization or to permit the use of its facilities for such purpose.  Such refusal shall not give rise to liability of such hospital or health care facility, or any personnel or agent or governing board thereof, to any person for damages allegedly arising from such refusal, nor be the basis for any discriminatory, disciplinary, or other recriminatory action against such hospital or health care facility, or any personnel, agent, or governing board thereof."

Although the constitutionality of section 69-5223 was questioned by plaintiffs in oral argument, we need not decide that issue at the present time.  We merely use section 69-5223 as persuasive authority, bearing on the legislative intent in enacting section 69-5217, for the purpose of resolving the ambiguity inherent in the last sentence of section 69-5217, R.C.M. 1947.  Viewing the two sections together, the resolution of the ambiguity is readily apparent.  With respect to the issue of voluntary sterilization, the physician has exclusive direction over his patient subject to rules and regulations based upon religious or moral tenets.

It is clear the hospital's rules respecting sterilization violate neither the United States Constitution nor the laws of the state of Montana.  The finding of no "state action" by the federal district court is res judicata in this action.  The district court therefore properly refused to issue a permanent injunction restraining Holy Rosary Hospital from enforcing its rules prohibiting sterilization within  the hospital by granting summary judgment in favor of the hospital.

The judgment is affirmed.

_____
                      Justice.

- 11 -

We concur:

------------------------------
Chief Justice

_John Conway Harrison_

_Gene B. Daly_

_Frank I. Haswell_

Justices.