No. 13029

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

MEDA FLAMM,

          Plaintiff and Respondent,

-vs-

REAL-BLT, INC.,
d/b/a Ponderosa Acres,

          Defendant and Appellant.

---

Appeal from:  District Court of the Thirteenth Judicial District,
               Honorable Robert Wilson, Judge presiding.

Counsel of Record:

    For Appellant:

        Kurth, Felt and Speare, Billings, Montana
        William J. Speare argued, Billings, Montana

    For Respondent:

        Terry L. Seiffert argued, Billings, Montana

---

                      Submitted:  September 26, 1975

                          Decided:  NOV 2 6 1975

Filed: NOV 2 6 1975

*Thomas J. Kearney*
                    Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a final judgment of the district court, Yellowstone County, granting a permanent injunction and declaratory judgment against defendant corporation. The injunction prohibits defendant from evicting plaintiff from its housing unit without first complying with the due process protection of the Fifth and Fourteenth Amendments of the United States Constitution, either by court hearing or sufficient administrative procedure, establishing good cause for the eviction.

Defendant landlord is a nonprofit corporation organized to provide housing for low income and senior citizens. It is the owner of a 120 unit multi-family apartment complex known as Ponderosa Acres in Billings, Montana. Financing of the complex was through a 100% federally guaranteed mortgage pursuant to 12 U.S.C. § 1715L (d)(3). To receive the 100% federally insured mortgage, defendant was required to and did sign a regulatory agreement. Defendant also signed a Rent Supplement Contract with the Department of Housing and Urban Development (HUD). The latter contract allows defendant to receive rent subsidies from the government on behalf of low income tenants. Together, these contracts bind defendant to government regulations in the areas of construction, design, management, maintenance, eligibility of the tenants, content of the leases and amount of rent charged the tenants. The standard Federal Housing Administration (FHA) regulatory agreement that limits occupancy to families of low or moderate income, as defined by the government was not required of the defendant corporation and this provision was stricken, thereby allowing Ponderosa Acres to admit tenants of its choice who were not involved with rent supplements.

On October 26, 1971, plaintiff rented the apartment involved in this action and entered into a lease agreement. Plaintiff qualified and received federal rent supplement. On September 26, 1974, defendant sent a notice of termination and notice to quit to plaintiff.

The notice was in accord with the FHA furnished lease, which provided that "Either party may terminate this lease * * * by giving 30 days written notice in advance to the other party." The notice followed several earlier attempts by defendant to collect $11.38 from plaintiff for a broken window caused by plaintiff's son.

Prior to the termination of the tenancy as per the 30 day notice, plaintiff filed her complaint to restrain defendant from evicting her on the grounds that the Fifth and Fourteenth Amendments to the Constitution of the United States require defendant to include in the notice of termination reasons which would amount to good cause and that plaintiff should be entitled to a hearing to establish the existence of good cause.

The district court held that defendant is so intertwined and intermingled with the United States government and its agencies that it cannot be classified as a private landlord under the Montana statutes pertaining to unlawful detainer and is subject to the Fifth and Fourteenth Amendments to the United States Constitution as a matter of law for these reasons:

1) Defendant's acceptance of 100% federally guaranteed financing under legislation designed for the specific purpose of providing federal rental assistance to the economically underprivileged.

2) Defendant's acceptance of rent supplements and subsidies in behalf of eligible low income tenants and specifically the plaintiff.

3) Defendant's acceptance and execution of a regulatory agreement pertaining to method of operation, form of leases, eligible tenants, etc., with the Secretary of Housing and Urban Development.

Defendant appeals from the district court judgment.

The issues presented for review concern whether the involvement of the federal government in defendant's business is sufficient to remove its classification as a private landlord.

The United States Supreme Court in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L ed 2d 45, noted that whether a state is sufficiently involved in private activities to make those activities governmental in nature will depend upon a close analysis of the facts of each case.

Plaintiff relies heavily upon the First Circuit Court of Appeals case of McQueen v. Druker, 317 F.Supp. 1122, aff'd 438 F.2d 781, which held the landlord to be within the scope of the First, Fifth and Fourteenth Amendments. Likewise plaintiff cited and relies on McClellan v. University Heights, Inc., 338 F.Supp. 374; and Colon v. Tompkins Square Neighbors, Inc., 294 F.Supp. 134. As heretofore pointed out, a close analysis of the cited cases reveals significant distinguishable fact situations of a substantive nature.

In McQueen, McClellan and Colon the housing involved in those cases had these additional government ties not found in the instant case: 1) The housing projects were built on land which was part of an urban renewal project. 2) The city or state government gave the owners of the housing projects reduced tax rates. 3) The daily operations of the projects were regulated and supervised by city, county and state - as well as federal agencies. 4) Occupancy of the projects was limited exclusively to low or moderate income people as defined by the federal government.

Plaintiff further contends (a) that defendant is subject to the requirements of the federal constitution because it is performing a governmental function; (b) that the announced policy of the federal government is "the realization as soon as feasible of the goal of a decent home and suitable living environment for every American family", 42 U.S.C. 1441; and (c) that the program here under consideration is designed to assist private industry in providing housing. For support plaintiff cites McQueen; Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L ed 265; Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L ed 2d 373. McQueen has already

- 4 -

been factually distinguished. Marsh involved the right to distribute religious literature in a company owned town contrary to the wishes of the town's management. The United States Supreme Court found state action there. Evans involved a park created pursuant to a trust established in a will. The park was initially operated by the city and later by private persons. The United States Supreme Court found in fact, the operation and maintenance of the park had not changed hands.

The Marsh and Evans "public function" doctrine has to date not been applied to facts as are in the case before us, and we are not inclined to expand that doctrine.

In McQueen v. Druker, 438 F.2d 781, 784, relied on by plaintiff, Circuit Judge Coffin stated:

> "We view our task of 'sifting facts and weighing circumstances' as one to be done to the end of determining when it is fair and reasonable to hold an individual subject to the same duties of observance of constitutional rights as are imposed on a governmental unit. Mere receipt of financial subsidy and subjection to some regulation are the conditions of much of our societal life. Neither factor--or both together--is dispositive of 'state action'."

The receipt of federal benefits in the form of mortgage insurance and rent supplements under 12 U.S.C. §1715L (d)(3), with freedom to select the tenants remaining in the landlord, does not make the defendant an agency of the federal government or the state of Montana so as to require defendant to accord the procedural due process which the Fifth and Fourteenth Amendments demand of federal government. McGuane v. Chenango Court, Inc., 431 F.2d 1189, (2d Cir.), Cert. denied 401 U.S. 994, 91 S.Ct. 1238, 28 L ed 2d 532. See also analogous discussion: Ham v. Holy Rosary Hospital, 165 Mont. 369, 529 P.2d 361, 31 St. Rep. 948, and cases cited therein.

A review of the authority indicates that the tenant's position would be correct if the landlord was public, if urban

renewal was involved, or if the federal government's control was so complete as to constitute this landlord's activities to be governmental in nature. 12 U.S.C.A. §1715L (d)(3), and annotations thereto.

Here the rent supplement contract and regulatory agreement do not appear to create any more governmental control than would be expected in any commercial transaction securing a substantial loan and receiving rent supplements of some proportion. Each agreement, one with FHA, and the other with HUD, contains provisions primarily to protect the money being advanced by the United States. Nowhere are the elements of urban renewal, public housing, control over prospective tenants and the limitation of them to "low income", special concessions by any governmental agency for reduced interest rates, guaranteed return of investment, relief from any taxes either state or federal, or acquisition of land by any governmental body.

The judgment of the trial court is reversed and the cause dismissed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.

- 6 -