**BOARD OF EDUCATION OF TOWN OF RINGLING et al. v. STATE ex rel. BENTON, Co. Treas.**

No. 24843. May 28, 1935.

J. L. Vertrees and E. B. Anderson, for plaintiff in error Board of Education.

J. L. Vertrees, E. B. Anderson, M. B. Cope, and Scott Ferris, Jr., for plaintiff in error Bank Commissioner.

Williams & Williams, for defendant in error Jefferson County.

PER CURIAM. This action was brought on behalf of Jefferson county against the

board of education of the town of Ringling on warrants issued by such school district during the years 1927 to 1930, aggregating, principal and interest, $31,846.85. It was alleged that the warrants had been transferred by the payees to the First State Bank of Ringling, which bank was the county depository and also the school district depository, and that the warrants were assigned from time to time by the bank to the county as security for county funds on deposit. It was alleged that the bank failed April 13, 1931, and that its deposit liability to the county was $29,954.32. In addition to other defensive matter, the school district pleaded the deposit liability of the bank to the school district, which was an amount exceeding the balance due upon the warrants as an offset to the county's claim, attacked the validity of the bank's assignment of the warrants to the county, alleged certain misappropriations of school district funds by the bank as a set-off or counterclaim, and also pleaded negligence of the county treasurer in handling and remitting school district funds to the depository bank as a counterclaim against the county. These defenses were stricken from the answer by the trial court. The State Bank Commissioner intervened, also attacking the validity of the assignment of the warrants by the bank, and sought judgment on the warrants in his favor against the school district to be offset against the bank's deposit liability to the school district.

The case was tried on a stipulation of facts, and the following matters were not in dispute: The validity of the warrants; the legality of the bank's title thereto acquired from the payees; the fact of assignment thereof by the bank to the county as security for the county's deposit; the amount due on the warrants; the amount of the closed bank's deposit liability to the county; and that the deposit liability of the closed bank to the school district exceeded the balance due on the warrants. The trial court rendered judgment for the plaintiff county, and both the school district and the Bank Commissioner have appealed. The parties will be referred to here as the county, school district, and Bank Commissioner.

The chief complaint of the school district is that it was deprived of proper and legal defenses stricken from its answer, and that the court erred in rendering judgment for the county for the amount of the warrants. The Bank Commissioner complains only that the assignment to the county was invalid and that judgment should have been rendered in his favor on the warrants, and of the allowance of attorneys' fees by the trial court.

The first contention of the school district is that the trial court erred in striking that portion of paragraph 10 of its answer which alleged in substance that at the time the respective warrants were assigned by the bank to the county, and up to the time the bank was closed, the school district had on deposit a sum in excess of such warrants which constituted a valid set-off against its liability on the warrants. There was no allegation that the deposit liability of the bank to the school district was due or matured at any time prior to the closing of the bank. In support of this position the school district contends that the warrants were nonnegotiable. Neither the record nor the brief contains a copy of these warrants, and we decline to pass upon their negotiability, but for the purpose of this decision we shall consider them nonnegotiable.

The action is one at law, and the propriety of the action of the trial court depends upon the law of assignment and set-off. The right of assignment, as well as the remedy of set-off, is governed by the Code of Civil Procedure adopted in 1893, sections 142, 143, and 206 to 212, Okla. Stats. 1931. Section 142 provides that all actions shall be prosecuted by the real party in interest; section 143 that any assignment shall be without prejudice to any set-off or defense now allowed, except as to transfer of negotiable instruments for value in good faith prior to maturity. Section 212 provides the conditions under which both may be asserted in the following language:

"When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by the assignment or death of the other; but the two demands must be deemed compensated so far as they equal each other."

Sections 206 to 211, inclusive, relate to practice and procedure. It is clear that there can be a set-off and compensation of opposing demands only where there is mutuality between the parties debtor and creditor, and mutuality of demands in the sense that both be matured and capable of supporting a present action for their enforcement. This construction accords with that of similar statutes in other jurisdictions, as stated in 57 Corpus Juris 486:

"Under some statutes, as, for example,

those providing in effect that when cross-demands have existed under such circumstances, that if one had brought an action against the other, a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by the assignment of the other, * * * it is held that a debtor, when sued by the assignee of the claim, cannot set off or counterclaim against such assignee demands which the debtor held against the assignor at the time of assignment but which matured after the assignment."

The demand pleaded as a set-off arose from the deposit contract between the bank and the school district independent and unconnected with the warrant contracts between the school district and the payees sued upon by the bank. Section 212 was construed in accordance with the rule stated in Corpus Juris in McMann v. H. F. Wilcox Oil & Gas Co., 121 Okla. 167, 250 P. 780:

"The assignment of a demand or chose in action, which, when the conditions of the contract giving rise to the same are complied with, will sustain a cause of action in favor of the assignee, defeats and strikes down the right of the debtor to set off, as a cross-demand, a claim arising by virtue of a separate, independent, and distinct contract of the assignor, when the right of action had not accrued at the time of the assignment."

See, also, Widdows v. Keaton (D. C. Okla.) 44 F. (2d) 839.

In that case the defendant contended that section 143 referring to set-off as "now allowed" contemplated the law as it existed prior to the adoption of the Code. Vice Chief Justice Branson answered that contention at page 169 of 121 Okla. Reports:

"The phraseology 'now allowed' is used in contradistinction to the character of claims that could be set off as against the plaintiff's demand before the adoption of codes or such as ordinarily would confine solely to liquidated demands similar to those allowed by the English statute. The Code, by reason of sections analogous to those pointed out above, had extended or enlarged the character of demands which might be asserted by defendant as a set-off, and that is what the phraseology 'now allowed' refers to.

"The statutes of the various states materially differ on the question as to when a set-off may be allowed in cases of assignment. Some of the states have the statute if not in identical words, at least in substance quoted above as found in section 4330 of the Oklahoma Territorial Statutes of 1890, and the line of authorities which hold that any set-off acquired by the defendant prior to notice of the assignment of the claim against the defendant are based upon such a statute. Where no such statute exists, we think the rule is well settled as laid down in Waterman on Set-off, sec. 99, to this effect:

"'Until a demand becomes due, the set-off or counterclaim may be defeated by the assignment by the opposite party of his claim, though the latter be insolvent and his demand has not been payable when assigned'"

—and quotes the applicable rule from section 91, Pomeroy's Code Remedies (4th Ed.) at page 168 of 121 Okla. Reports:

"'If, however, the assignment is made before the opposing demand becomes mature, and the latter does not thus become actually due and payable until after the transfer, the debtor's right of set-off is destroyed by the mere fact of the assignment, and no notice thereof to him is necessary to produce that effect.'"

The school district here relies chiefly upon the case of Petters & Co. v. School District No. 5 37 Wyo. 237, 260 P. 678. It appears that the Wyoming statute was taken from Ohio and was construed to permit set-off of a demand arising or maturing after assignment of opposing demand prior to notice of the assignment, which was similar to the statutes in Oklahoma prior to adoption of the Code. Cases from other jurisdictions are cited as supporting the rule in Petters & Co. Case, but appear to be based upon statutes given a similar construction to that of Wyoming. Counsel for plaintiff in error suggests that the difference between the construction of the Oklahoma statute in McMann v. H. F. Wilcox Oil & Gas Co., supra, and the construction of the Wyoming statute in Petters & Co. v. School District No. 5, supra, is one in theory only, and in effect argue that the law remains the same as it existed prior to the adoption of the Code. With this contention we cannot agree. The facts pleaded did not constitute a legal set-off, and the action of the trial court is approved.

The school district complains of the striking of paragraph 11 of its answer, which alleged misappropriations or embezzlement of school funds by the depository bank or its officers. This defense is referred to and presented as a set-off. The allegations sound in tort, but whether considered as a cause arising upon tort or contract, the same was insufficient, and the trial court committed no error in striking the same. In the first place, if the matter alleged be considered as a demand in tort. as the allegations clearly imply, it was not a proper set-

off against the county's action upon the warrant contracts. Section 208, Okla. Stats. 1931, provides:

."A set-off can only be pleaded in an action founded on contract, and must be a cause of action arising upon contract or ascertained by the decision of a court."

This statute was applied in Abraham v. State, 117 Okla. 77, 244 P. 741, in the following language:

"In an action to recover on a promissory note. the defendant cannot plead as a set-off a cause of action arising to defendant from a tort not reduced to judgment by the decision of a court."

To the same effect see Tracy v. Norvell, 92 Okla. 240, 219 P. 384; National Bank of Claremore v. Jefferies, 126 Okla. 283, 259 P. 260; Clark v. Herbert, 132 Okla. 272, 270 P. 329; First National Bank v. Jackson, 140 Okla. 282, 283 P. 242.

Likewise, the matter pleaded is not sufficient as a counterclaim for the reason that the alleged conduct of the bank or its officers was in no wise connected with the contracts sued upon. Section 207, Okla. Stats. 1931, provides in part as follows:

"The counterclaim mentioned in the last section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim or connected with the subject of the action or on account of a wrongful attachment or garnishment issued and levied in said action after the same has been set aside. The right to relief concerning the subject of the action mentioned in the same section must be a right to relief necessarily or properly involved in the action for a complete determination thereof. or settlement of the question involved therein"

—and was applied in Hurst v. Hannah, 107 Okla. 3, 229 P. 163:

"The counterclaim in section 274 must be one arising out of the contract set forth in the petition as the foundation of plaintiff's claim. or connected with the subject of the action."

See also, Johnson v. Acme Harvesting Machine Co., 24 Okla. 468, 103 P. 638; First State Bank of Mannsville v. Horton, 57 Okla. 702, 157 P. 312; Stolfa v. Gaines, 140 Okla. 292, 283 P. 563; McGowan v. Carlton, 143 Okla. 106, 288 P. 338.

If, however, the matter alleged be considered as sufficient to evince a purpose to waive the bank's tortuous conduct and to elect to rely upon its contract liability to the school district, the allegations are insufficient to constitute a set-off against the county for the reasons set out in connection with the first defense heretofore considered. Under such a theory, the only contractual obligation of the bank would be to render the funds on demand, and since none was pleaded the obligation of the bank had not matured when the warrants were assigned to the county.

The school district complains of the striking of paragraphs 7, 8, and 9 of its answer. In these paragraphs the school district attacked the validity of the bank's assignment of the warrants on the ground that the transfer was not authorized by the bank officials, and on the ground that the county deposits were made while one of the county commissioners was also a stockholder and director of the bank, and that the warrants were not approved as security by the county judge of the county and the county attorney in violation of section 7428, Okla. Stats. 1931. However, any error in striking these allegations was cured by .stipulation at the trial to the effect that the warrants were assigned by the managing officer of the bank without a formal resolution of the directors, and that after designation of the bank as county depository a stockholder and director of the bank became county commissioner, and that the warrants were never approved as collateral by the county judge and county attorney. The facts alleged were thus put in evidence, and the error, if any, is in the final judgment of the trial court.

It was within the powers of the bank to pledge these warrants. Maryland Casualty Co. v. Board of County Com'rs, 128 Okla. 58, 260 P. 1112; Pottorff v. El Paso Hudspeth Counties Road District (C. C. A. 5th Cir.) 62 F. (2d) 498. The bank procured the county deposits by transfer of these securities, and regardless of whether the transfer was authorized by the board of directors, the bank, having received and retained the benefit of the transaction, could not question the validity thereof. On this point it is said in First National Bank v. First National Bank, 130 Okla. 149, 265 P. 1051:

"When a cashier of a bank makes a contract which is beyond his power and authority, but the bank by reason thereof secures a benefit or beneficial effect, it will not thereafter be heard to urge nonliability thereunder on the plea of ultra vires."

See, also, Crowder State Bank v. Aetna Powder Co., 41 Okla. 394, 138 P. 392; Yeldell v. Bank of Elmer, 96 Okla. 184, 221 P.

422; McKinnon v. Monarch Loan Co., 111 Okla. 213, 239 P. 170; Id., 225 P. 955; Lander State Bank v. Putnam, 40 Wyo. 312, 276 P. 926.

Upon the same principle the bank could not question the validity of the transfers by reason of irregularities in making the deposit or acceptance of the security. The following cases relate to bonds given as security instead of assets, but the principle is identical. The following appears in 18 Corpus Juris, 591:

"The bond of a de facto depository is binding when public funds have been deposited in reliance thereon, although the designation is irregular or unauthorized."

Of the failure to comply with the law in designating the depository, it is said in Henry County v. Salmon, 201 Mo. 136, 100 S. W. 20:

"A banker became a county dispositary on the making, filing and approval of his bond. He assumed and acted as depositary, and received the moneys of the county as such. Held, that the bond was valid though the county court made no preliminary order designating the banker as depositary as required by Laws 1901, p. 101."

See, also, Western Casualty & Guaranty Ins. Co. v. Board of Com'rs, 60 Okla. 140, 159 P. 655; Oakland Co. v. Central West Casualty Co., 266 Mich. 438, 254 N. W. 158; City of Cheyenne v. Maryland Casualty Co. (D. C. Wyo.) 13 F. (2d) 401.

The Bank Commissioner is in no better position to question the validity of the assignment. Counsel for the school district urge these irregularities and certain allegations of negligence of the county treasurer in handling and remitting school funds to the bank, presently considered as additional grounds for treating the warrants as non-negotiable and subject to equities existing between the bank and the school district. We are here dealing not with equities or defenses between the maker and payee, but those of the maker against an assignee. As pointed out heretofore, their nonnegotiability is assumed for the purpose of this decision, but, as also pointed out, the school district's claims against the assignor bank had not ripened at the time of the assignment and were not available against the assignee.

The school district next asserts error in striking paragraphs 12, 13, 14, and 15 from its answer. In these paragraphs it was alleged in substance that the county treasurer was guilty of negligence in remitting school district funds to the bank as the district depository on demand of the school treasurer, which funds were misappropriated by the bank or lost by its insolvency, when he knew or ought to have known that the school treasurer had failed to give a bond, and had failed to take from the bank securities to guarantee such deposit as required by law, and that the county treasurer was negligent in failing to collect these warrants before the school funds were dissipated by the bank.

These allegations seek to charge the county with liability for negligence and failure of the county treasurer to discharge his official duties. On this subject it is said in Vigo Township v. County of Knox, 111 Ind. 170, 12 N. E. 305:

"The relations between the board of commissioners of a county and a county treasurer are such that all the requisites to make the county answerable, as principal for the defalcations of the treasurer, as agent, are wanting. The treasurer is in no way dependent upon the board for his appointment to or continuance in office. His duties are all prescribed by law, and in the exercise of his office he is in no way subject to the control of the county board. He performs official duties for the state, as well as for the county, and for every township and municipality within the territorial boundaries of the county. His duties are, therefore, not for the special or peculiar benefit of the county, nor for its interest, in any different sense than are they for the benefit or interest of the state, or the other municipalities in whose behalf the law requires the county treasurer to perform official service. He is a person selected in the manner prescribed by law, and has certain public functions to perform, which are all prescribed by statute, and primarily laid upon him, and for the performance of which he is held civilly and criminally responsible. He is not, therefore, the agent of the county, in respect to funds collected by him for townships, nor can the county be held answerable for his delinquency, in the absence of an express statute making it liable. This is according to the principle deducible from the authorities, which hold, in effect, that a municipal corporation is not to be regarded as principal, and therefore liable for the defalcations and delinquencies of its public officers, in failing to perform public duties which the law has laid upon them, and in respect to which the municipality is neither invested with corporate power, nor charged with any corporate duty or statutory liability, and from the performance of which it derives no special advantage. The officer, under such circumstances, is regarded as an independent public agent, or quasi civil officer of the government, personally answerable for his misconduct or official delinquencies, and not the agent or servant of

the municipality. Omissions of duty, imposed upon such an officer by law, however injurious they may be to others, are not injuries for which the corporation of which he is nominally an officer is liable."

The rule of nonliability is well settled. Howard v. Rose Township, 37 Okla. 153, 131 P. 683; Welker v. Annett, 44 Okla. 520, 145 P. 411; Board of Com'rs v. Barker, 119 Okla. 206, 249 P. 296; Hazlett v. Board of County Com'rs, 168 Okla. 290, 32 P. (2d) 940; United States v. Board of Com'rs (C. C. A. 10th Cir.) 54 F. (2d) 593; City of Fargo v. Cass County, 35 N. Dak. 372, 160 N. W. 76; State v. Spinney, 166 Ind. 282, 76 N. E. 971.

This action was brought on behalf of the county to protect and recover county funds. It received no benefit from the treasurer's alleged misconduct, and cannot be subjected to liability therefor either directly or indirectly by way of set-off or counterclaim. The ruling of the trial court in this respect was proper.

It is finally urged that it was error to allow against the judgment, for the balance due on the warrants, an attorney's fee of $1,500 as a part of the expense of collection of the bank's pledge upon the ground that employment of counsel was unnecessary under section 7617, Okla. Stats. 1931, declaring it to be the duty of the county attorney to prosecute all actions on behalf of the state or county. The school district does not appear to have any interest in the matter and has not presented it in its brief. The question is therefore treated as waived. Connelly v. Adams, 52 Okla. 382, 152 P. 607; Harden v. American-First National Bank, 154 Okla. 11, 6 P. (2d) 1062; Watchorn v. General Finance & Sales Co., 162 Okla. 203, 19 P. (2d) 566.

The Bank Commissioner did not raise the question in the trial court, but presents the issue on appeal. It is well settled that an issue clearly nonjurisdictional first raised on appeal will not be considered. Adams v. Berry-Beall Dry Goods Co., 99 Okla. 86, 225 P. 927; Fast v. Gilbert, 102 Okla. 245, 229 P. 275.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Cyrus L. Billings, Valjean Biddison, and Albert H. Bell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Billings and approved by Mr. Bell and Mr. Biddison, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, and GIBSON, JJ., concur.