**FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Liquidating Agent of
the Bank of Newcastle, Newcastle,
Oklahoma, Appellant,**

v.

**Ted A. MOSS, an individual, Appellee.**

No. 69253.

Supreme Court of Oklahoma.

Nov. 5, 1991.

Rehearing Denied June 16, 1992.

Gregory E. Gore, Fred S. Morgan, Reynolds, Ridings & Hargis, Oklahoma City, for appellant.

John F. Percival, Culp, Heath, Sushnik, Percival & Percival, Oklahoma City, for appellee.

SUMMERS, Justice.

As a result of the downturn in Oklahoma's economy during the 1980's the Federal Deposit Insurance Corporation has become a major litigant in many courthouses. In today's case the FDIC has functioned in two capacities: one as receiver of a failed bank to which money was owed on a note, and another as insurer of a second failed bank alleged to owe money to a depositor. The FDIC in these two capacities is brought together here because the debtor of the first failed bank happens to be the depositor of the second. Our issue is framed by FDIC's claim that it must be treated separately in its dual capacities—that its suit on behalf of failed bank number one is not subject to any offset or counterclaim against failed bank number two. This is our first opportunity to examine the dual roles of the FDIC and how they fit into Oklahoma's civil procedural establishment.

## FACTS AND BACKGROUND

Moss borrowed money from the Bank of Newcastle and gave his promissory note. The Bank of Newcastle failed, and on May 16, 1985, the FDIC was appointed by the State Banking Commissioner as its liquidating agent. The Moss note went into default. FDIC filed this suit, attempting to collect the debt owed the bank. Moss answered, disputing the amount owed. He also counterclaimed, asserting that FDIC was holding funds belonging to him in excess of the total amount owed on his note. These funds were in the form of certificates of deposit owned by him and issued by the Dill State Bank. Dill State Bank had become insolvent on July 7, 1985, and FDIC had been appointed as liquidating agent for that failed bank. In other words, Moss wants to offset FDIC's claim against him for his note to Bank of Newcastle, by using money he says is rightfully his but which is being withheld by FDIC for Dill State Bank, because FDIC is responsible for Dill State Bank's deposits.

Moss filed a motion for summary judgment on his counterclaim. In his motion, he claimed that FDIC in its capacity as corporate insurer owes him the total amount of his certificates of deposit. He attached copies of the certificates of deposit held by FDIC. In response to the summary judgment motion, FDIC urged that the counterclaim of Moss should not be allowed because a debt owed by one receivership (Dill State) could not be set off against a debt due another receivership (Newcastle). FDIC also urged that the primary action filed involved FDIC as liquidating agent for Newcastle, rather than FDIC in its corporate capacity (or capacity as liquidating agent for Dill,)[1] and thus the counterclaim was not proper under the Oklahoma Pleading Code, 12 O.S.Supp.1984 § 2013.

Finally, FDIC stated there was a factual defense to the counterclaim, that the records of Dill State Bank show that Moss' three certificates of deposit had been cashed by the president of the bank *with the consent of Moss.* As support for this, FDIC–Newcastle attached to its response the copy of a check made payable to Moss, endorsed by the bank president "as per telephone conversation with Moss." One other certificate of deposit presented by Moss was not found in the Dill State Bank records.

The trial court granted Moss' motion for summary judgment on his counterclaim. In doing so, the court stated that FDIC, in both its capacities as liquidating agent and corporate insurer, had been granted two extensions of time to produce evidence to dispute Moss' claim that the certificates of deposit were owing. FDIC had failed to produce any evidence to refute this other than the endorsement mentioned above. The court made a factual determination that insofar as the certificates were concerned, the FDIC was acting in its capacity as corporate insurer and was responsible for the loss, regardless of how it occurred. Finding no material facts in dispute, the trial court granted summary judgment as

**1.** In this opinion we use "receiver" and "liquidating agent" interchangeably for FDIC in its first capacity. We use "corporate" or "corporate insurer" to describe it in its second.

to Moss' claim. Still pending in the trial court is the original action filed by FDIC on the note to Bank of Newcastle.

On appeal, the Court of Appeals, in an unpublished opinion, summarily affirmed the judgment of the trial court. Having earlier granted certiorari, we now vacate the opinion of the Court of Appeals, hold that the counterclaim was procedurally proper but not winnable at the summary judgment stage, and remand to the trial court.

### IS THE APPEAL PREMATURE?

■ We first address the question of whether the trial court's grant of summary judgment as to Moss' counterclaim is a final disposition from which an appeal may lie. Generally, summary adjudication of less than all issues of a single cause of action is beyond the reach of review. *See* 12 O.S.1981 § 681; *Mann v. State Farm Mut. Auto. Ins.*, 669 P.2d 768, 771 (Okl. 1983). This rule, however, does not include the situation wherein there are two distinct claims which arise out of separate transactions or wrongs. *Oklahomans for Life, Inc. v. State Fair*, 634 P.2d 704, 706 (Okl. 1981); *see also Eason Oil Co. v. Howard Engineering*, 755 P.2d 669, 671 (Okl.1988).[2]

In *Eason*, we addressed the question of whether the adjudication of a counterclaim may result in a final appealable disposition:

> The rule is different when "multiple claims" in a case—whether denominated as claims, cross-claims or counterclaims—tender issues that address themselves to legal rights derived from a single occurrence or transaction. In those latter instances no judgment will result from the resolution of any single claim. All interrelated claims must be decided before judgment will be deemed to have been rendered. *Conversely, when none of the multiple claims pressed in the same action is interrelated with another, the trial court's decision determining all the issues in a single claim will be deemed to constitute a judgment.*

The "interrelated claims" rule rests on the principle that issues pressed in multiple interrelated claims cannot be completely decided until all of the issues raised in each of the claims stand resolved. (Emphasis Added) (Id. at 671–72)

■ In our present case, Moss' counterclaim against the FDIC in its capacity as Dill/corporate insurer is separate and distinct from the original claim of the FDIC as Newcastle/Liquidating Agent. Similarly, in *Oklahomans for Life*, 634 P.2d at 706, we held that summary judgment as to one cause of action was a final judgment that could be appealed. There, the petition stated two causes of action—one for tortious breach of a lease and one for acts of conspiracy. Because these two causes of action were based on "separate transactions or wrongs," we held them to be separate and distinct from one another thereby allowing appeal of the summary disposition of one of the causes of action. Here, the two events giving rise to the different claims occurred at different times, in different towns and at different banks. The only relation between the two claims is the parties. On appeal, the FDIC urges that there is not even this common fact between the two actions.

Hence, under *Eason* and *Oklahomans for Life*, we find that the order of the trial court sustaining Moss' request for summary judgment is a final appealable disposition. In granting the summary judgment the trial court ruled on all issues presented by Moss' claim. Because his counterclaim was based on a separate and distinct occurrence, unrelated to the subject of the original suit, the appeal is properly before this Court.

### PROCEDURAL ISSUES

Appellant FDIC raises several objections to the propriety of granting summary judgment. First, FDIC argues that Moss' counterclaim should have been dismissed because it fell outside the boundaries of Fed-

---

**2.** There are statutory exceptions to the general rule; (1) interlocutory orders appealable by statutory right, *see* 12 O.S.1981 §§ 952, 953 and (2) orders certified for appeal prior to final judgment. *See* 12 O.S.1981 § 993. These are not at issue here.

eral Rule 13(b). FDIC also urges that dismissal was required because the "remedy" of setoff was not available to Moss. If we determine that the counterclaim was proper, FDIC then asserts that summary judgment was improper because factual disputes remain below.[3]

## A. PERMISSIVE COUNTERCLAIMS AND THE "OPPOSING PARTY" REQUIREMENT

FDIC urges that Moss' claim is not a proper counterclaim because it was not brought against an "opposing party." The original action against Moss was brought by FDIC as receiver for Bank of Newcastle. Moss in turn filed a claim against FDIC as corporate insurer of Dill State Bank. Throughout the proceedings below, Moss treated the action as if it were a counterclaim. FDIC treated it as if it were a third-party cross-claim filed against FDIC–Dill in its corporate insurer capacity. On appeal, FDIC urges that it is not a proper counterclaim under the Oklahoma Pleading Code. Before we answer this question, it is necessary to explain the dual capacities of the FDIC and the impact of these different capacities on the "opposing party" requirement for a permissive counterclaim.

It is generally recognized by federal caselaw that the FDIC operates in two distinct capacities: (1) receiver or liquidating agent of insolvent banks, *Jones v. F.D.I.C.,* 748 F.2d 1400, 1402 (10th Cir. 1984), and (2) corporate insurer of deposits. To avoid inconvenience to the customers of the failed bank and the significant problems of liquidation, the FDIC, whenever feasible, employs a Purchase and Assumption Agreement in which the FDIC arranges for another bank to purchase the failed bank and reopen the failed bank without interruption of banking operations. *Gunter v. Hutcheson,* 674 F.2d 862, 864 (11th Cir.1982). The P & A Agreement involves three entities: (1) FDIC as Receiver or liquidating agent, (2) the purchasing bank and (3) FDIC as corporate insurer.

When the FDIC is appointed as liquidating agent of a failed state bank, it is then called upon to act in dual capacities—as liquidating agent and as corporate insurer. *Id.; F.D.I.C. v. Ashley,* 585 F.2d 157, 160 (6th Cir.1978). "[T]he division of authority between the F.D.I.C. as receiver and F.D.I.C. as corporate insurer [sic] is statutorily mandated.... Section 1823 [12 U.S.C. § 1823], moreover, clearly contemplates transactions between the F.D.I.C. as receiver and F.D.I.C. as corporate insurer [sic]." *Gunter,* 674 F.2d at 862; *see also F.D.I.C. v. Buttram,* 590 F.Supp. 251, 254 (N.D.Ala.1984).

One central problem arises in a P & A agreement. Because the agreement must be carried out with great speed, the purchasing bank often does not have sufficient time to review and evaluate the risks of the failed bank. Thus, to accomplish a speedy transition, the P & A agreement provides that the purchasing bank need purchase only those assets of high quality. Those which are not purchased are returned to the FDIC as liquidating agent. FDIC as liquidating agent then sells those bad assets to FDIC in its corporate capacity. *Id.* The FDIC, in its corporate capacity, then attempts to collect on these returned assets.

While on its face the FDIC appears to be only one entity, federal statutes mandate the distinction in capacity. *See* 12 U.S.C. § 1823. FDIC in its corporate capacity is not responsible for the wrongs of FDIC as receiver. *F.D.I.C. v. Roldan Fonseca,* 795 F.2d 1102, 1109 (1st Cir.1986). The FDIC does not act in its receiver capacity after the assignment of "bad assets," but rather in its corporate capacity. *Batsakis v. F.D.I.C.,* 670 F.Supp. 749, 753 (W.D.Mich.1987). After FDIC in its corporate capacity acquires assets from the FDIC as receiver, FDIC-corporate may bring suit to recover on those assets "in its own right." *F.D.I.C. v. Bank of Boulder,* 911 F.2d 1466, 1470 (10th Cir.1990).

**3.** We do not address the remainder of the issues raised by FDIC because they were not presented in the amended petition for certiorari. *See Ford v. Ford,* 766 P.2d 950, 952 (Okl.1988).

■ The distinct capacities become relevant when Moss' counterclaim is considered. In order to fall within the parameters of a permissive counterclaim under both Federal Rule 13(b) and 12 O.S.Supp. 1984 § 2013(B), the claim must involve an "opposing party." [4] *See, e.g., Corning,* 696 F.Supp. at 1247. A party may bring a permissive counterclaim "against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." *See* 12 O.S.Supp.1984 § 2013(B); Federal Rule 13(b). The "opposing party" requirement with respect to a counterclaim means that when a plaintiff has brought suit in one capacity, the defendant may not counterclaim against him in another capacity. *Banco Nacional De Cuba v. Chase Manhatten Bank,* 658 F.2d 875, 885 (2nd Cir. 1981). A counterclaim against the FDIC in a capacity other than as the original claimant cannot be sustained. *F.D.I.C. v. Corning Savings & Ln. Ass'n,* 696 F.Supp. 1245, 1247 (E.D.Ark.1988). *See also Dove v. F.D.I.C.,* 154 Ga.App. 667, 269 S.E.2d 516 (1980). In this case, Moss' counterclaim is procedurally legitimate only if the counterclaim involved the FDIC in the same capacity as the original claim.

■ Here, the FDIC was appointed as liquidating agent of both the Newcastle Bank and the Dill State Bank. In both cases, a P & A agreement was made, and banking operations never ceased. At the trial level, FDIC urged that it was not present in court in its capacity as corporate insurer, but was only present as a liquidating agent for Newcastle. It is this factual assertion which was the basis of FDIC's argument that the counterclaim was not proper within the original action because there was no mutuality of parties.

However, on appeal, the FDIC has changed its position, apparently realizing that *only the holder of Moss' note has standing to bring suit. See, e.g., Dove,* 269 S.E.2d at 517. In the reply brief, FDIC

states that Moss' promissory note was sold by FDIC as liquidating agent for Newcastle to FDIC in its corporate capacity. *FDIC in its corporate insurer capacity is therefore the holder of the promissory note.*

Moss' counterclaim is against FDIC in its corporate insurer capacity. Because FDIC now clarifies on appeal that it appears in this lawsuit in its corporate insurer capacity, we agree that Moss' counterclaim properly falls within Federal Rule 13(b) and 12 O.S.Supp.1984 § 2013(B). Moss' claim arises out of a completely separate transaction, but involves the same party—FDIC in its corporate insurer capacity.

FDIC asserts on appeal that the counterclaim should not be permitted as it involves the failure of the Dill State Bank whereas the original action involved the Newcastle Bank. Relying on *F.D.I.C. v. Berry,* 659 F.Supp. 1475 (E.D.Tenn.1987), FDIC asserts that claims arising out of one receivership cannot be imputed to another receivership. However, because we have determined that the Plaintiff is FDIC in its corporate capacity rather than FDIC as receiver, which is also the proper party against whom the counterclaim lies, we need not address this question.

### B. SETOFF

■ FDIC also asserts that setoff is not proper in this case because Moss' counterclaim did not arise until after FDIC had been appointed as receiver for the Newcastle Bank. Relying on *Bailey v. Lankford,* 154 P. 672, 674 (Okl.1916) and *FDIC v. McKnight,* 769 F.2d 658 (10th Cir.1985), FDIC claims that a debtor cannot assert any rights to offset for debts or claims arising after the bank's receiver is in place because the relationship between the parties is frozen as of the time of insolvency.

In *McKnight,* the FDIC was called in to be receiver of the failed Penn Square Bank. Immediately, FDIC reprogrammed the

---

**4.** We address this issue under both federal and state procedural rules because of the complications involved when the FDIC acts in dual capacities with regard to a state bank. Federal law applies if the action involves FDIC—corpo-

rate, but state law *may* apply if it is the receiver capacity in which the FDIC appears. *See F.D.I.C. v. Roldan–Fonseca,* 795 F.2d 1102, 1106 (1st Cir.1986); *F.D.I.C. v. Ashley,* 585 F.2d 157, 161–62 (6th Cir.1978).

bank computers to reject any payment of more than $100,000.00. However, FDIC failed to program the computers to reject cashier's checks above this amount. Before the computer error was corrected, two cashier's checks in excess of the limit were cashed. An action was brought by the FDIC to recover the excessive payment. The defendants urged that the payment was final and restitution for the excess was not required. The Tenth Circuit held that at the time of the insolvency, the relation of the parties became "cast in stone". *Id.* at 661. Regardless of the excessive payment, at the time of insolvency FDIC was bound by federal banking law which insured deposits only up to the amount of $100,000.00. Hence, the FDIC was entitled to recovery of all amounts in excess of $100,000.00.

We agree that as for the loan held by Newcastle, the relationship between FDIC as receiver of Newcastle and Moss was frozen when Newcastle became insolvent. However, we disagree that the Newcastle relationship extends and affects the relationship which later arose between FDIC as corporate insurer of Dill State Bank and Moss. If such were the case, Moss' certificate of deposit at Dill State would in effect be "uninsured" because of the earlier insolvency of Newcastle. We decline to extend *McKnight* to cover the present factual situation.

As for *Bailey*, we agree that prior to the adoption of the present pleading code, the general rule for setoff was that a debtor could not assert any claim arising after the bank's insolvency. *See also Beams v. Young,* 222 P. 952, 954 (Okla.1923). However, under the pleading code enacted in 1984, a party may file as a counterclaim "any claim against an opposing party" regardless of whether it arises out of a transaction separate from the initial claim. *See* 12 O.S.Supp.1984 § 2013(B). The purpose of such a broad rule is to allow the disposition of all claims at once. *Mayes v. Local 106, Int'l Union of Operating Engineers,* 739 F.Supp. 744, 748 (N.D.New York 1990). Permissive counterclaims include those claims that were for-

merly known as setoffs in Oklahoma practice. *See* Committee Comment to Section 2013; *see also* 12 O.S.1981 § 272 (now repealed and replaced by 12 O.S.Supp.1984 § 2013). A trial court has ancillary jurisdiction of a permissive counterclaim in the form of a setoff. *United States v. Thermo Contracting Corp.,* 437 F.Supp. 195, 199 (D.New Jersey 1976). Furthermore, Section 2013(E) provides that a claim which matured or was acquired after the serving of a pleading may, with the court's consent, be added and presented as a counterclaim.

Here, the initial action was filed on December 5, 1985. When Moss answered, he reserved the right to plead further with regard to counterclaims. On July 14, 1986, he amended his answer to assert his counterclaim. Dill State Bank was declared insolvent several months after Newcastle's insolvency. Clearly the counterclaim did not mature until the failure of Dill State Bank on July 7, 1985. However, we believe that regardless of the fact that it accrued or matured after the Newcastle failure, Section 2013 allows for such a counterclaim by way of setoff to be filed. *Bailey* is not determinative of this issue because it was decided long before the enactment of our current Pleading Code.

### FACTUAL DISPUTES

The central factual question surrounding Moss' counterclaim is whether Moss consented to the bank president's actions of withdrawing the certificates of deposit, and depositing them into the president's account. Moss states that he had no knowledge of and did not consent to such actions. However, the endorsement on the back of the check stated that the action was taken with the consent of Moss.

Summary judgment is a procedural tool used to reach a final judgment in those cases where there is no dispute as to any material fact. *Manora v. Watts Regulator Co.,* 784 P.2d 1056, 1058 (Okl.1989). The court may not weigh evidence, but may only review the evidence presented to determine whether there is a factual dispute. *Stuckey v. Young Exploration Co.,* 586 P.2d 726, 730 (Okl.1978). All inferences in

the evidence must be taken in favor of the opposing party. *Erwin v. Frazier*, 786 P.2d 61 (Okl.1989). Summary judgment will be denied if under the evidence, reasonable men could reach a different conclusions. *Runyon v. Reid*, 510 P.2d 943, 946 (Okl.1973). The issue is not proper for summary judgment and must be presented to a jury if different conclusions as to the facts may be drawn with regard to a particular fact question. *Anderson v. Falcon Drilling Co.*, 695 P.2d 521, 524 (Okl.1985).

■ Here, the facts surrounding Moss' certificates of deposit are cloudy. Moss claims that the bank president was not authorized to cash them or to deposit them in the president's personal account. In its reply brief, FDIC asserts that no evidence was ever presented to the trial court as to the whereabouts of the money, or as to whether it was embezzled by the bank president. FDIC also claims that Moss consented to whatever the president did. Remembering that the trial court may not, at this stage, weigh the evidence, we find that summary judgment was not properly granted. There is evidentiary material before the court that Moss consented to the Dill Bank President's cashing in his certificates. At least one material factual dispute remains as to Moss' counterclaim.

The opinion of the Court of Appeals is vacated. The summary judgment of the district court is reversed and the matter remanded for further proceedings on the counterclaim.

HODGES, V.C.J., and LAVENDER, DOOLIN, HARGRAVE and ALMA WILSON, JJ., concur.

1. The claims are interrelated within the teachings of *Eason Oil Co. v. Howard Engineering*, *infra* note 14, when they arise out of the same occurrence or transaction or when one claim may be set off against another. See Part III of this opinion.

2. The terms of 12 O.S.1981 § 681 are:
"A judgment is the final determination of the rights of the parties in an action."

3. In his amended answer Moss plead as an affirmative defense:

OPALA, C.J., and SIMMS, J., dissent.

KAUGER, J., not participating.

OPALA, Chief Justice, with whom SIMMS, Justice, joins, dissenting from the court's failure to dismiss this appeal.

The court's pronouncement holds, *inter alia*, that the plaintiff/appellant (FDIC) tenders for review an appealable decision. Although the adjudication from which corrective relief is sought gave the defendant/appellee (Moss) "summary judgment" on his counterclaim for setoff, *it left undetermined not only FDIC's own claim but also other material issues raised by Moss' quest for affirmative relief against FDIC.* I would dismiss this appeal because (1) the decision before the court is clearly revealed by the record to be but a *nonappealable* partial summary adjudication and (2) even if we assumed, contrary to the record, that the trial judge intended to give Moss a free-standing, executable judgment, the disposition of Moss' claim while FDIC's remains pending lacks the attributes of appealability. *The claims of both FDIC and Moss are indeed interrelated*[1] *and must be decided to make the disposition appealable as a judgment within the meaning of 12 O.S.1981 § 681.*[2] *I would so hold.*

## I.

### THE ANATOMY OF LITIGATION

FDIC sued Moss to recover on a promissory note in default. Moss denied that the obligation was past due, disputed the amount, and pleaded setoff based on matured certificates of deposit allegedly held by FDIC. He also counterclaimed for an accounting and payment of funds due him in excess of his total indebtedness.[3] *Moss*

"* * * FDIC currently holds funds ... that are the property of [Moss].... Said funds ... are sufficient to fully discharge the indebtedness owed by [Moss].... [Moss], hereby, formally elects, as is his right, to have said funds applied to the indebtedness owed by him to [the bank] ... in full satisfaction thereof."
This allegation "states a pro tanto defense by way of set-off." *Brown v. Holden*, Okl., 410 P.2d 528, 533 (1966).

*later pressed a "partial summary judgment" plea, which the trial court sustained. This appeal is from that decision. According to the appellate briefs, FDIC's claim remained pending when it brought its petition-in-error.*

## II.

## FDIC HAS TENDERED NO APPEALABLE DECISION FOR THIS COURT'S REVIEW

By definition, a "partial summary judgment," or more precisely, a partial summary adjudication, disposes of *less than all of the issues in a claim for relief.*[4] *Decisions under this rubric are not appealable,* unless they fall into a class of interlocutory orders appealable by right or are certified for immediate appellate review.[5] *Although the court treats the nisi prius order in this case as an immediately executable judgment against FDIC, the*

Moss denominated his demand as a "counterclaim" by the following language:
"* * * FDIC currently holds funds in an amount in excess of the total indebtedness of [Moss] ... in the form of deposits seized.... [Moss] is entitled [sic] for an accounting for said funds, and payment of the net surplus of said funds...."

**4.** *Reams v. Tulsa Cable Television, Inc.*, Okl., 604 P.2d 373, 374 (1979).
"Summary adjudication" serves to highlight the essence of the decisional process when *some* issues are summarily determined but no judgment is rendered. This terminology appears to have been adopted by the Committee on Rules of Practice and Procedure of the U.S. Judicial Conference in its most recent proposal to revise Rule 56, F.R.Civ.P. "FRCP 56 on summary judgment is completely rewritten. *The procedure is described as summary adjudication,* to include both summary judgment disposing of an entire claim or defense, and a summary determination that does not resolve an entire claim." *Federal Practice Advisory* at 2 (Sept. 9, 1991).

**5.** *Reams v. Tulsa Cable Television, Inc., supra* note 4 at 374.

**6.** *Moss' brief in support of his "Motion for Partial Summary Judgment" prominently states:*
"* * * [T]he claims of Ted A. Moss for an accounting and his allegations that the Bank of Newcastle did not properly credit payments made against his Note at Bank of Newcastle *are not at issue in this Motion for Partial Summary Judgment.* The *sole issue to be presented in support of this Motion for Partial*

*record appears to refute that characterization.*

Moss had expressly asked the trial court for a ruling on but a single issue—whether there is any factual dispute over the mere "existence of deposits and total liabilities" due him in the amount of $90,136.76.[6] Specifically excluded from consideration below were the other issues joined by Moss' claim for affirmative relief.[7] *The journal entry and a signed courtroom minute explicitly sustain no more than Moss' "Motion for Partial Summary Judgment."* Although the journal entry bears added language indicating "judgment" had been rendered and describing Moss as "prevailing party,"[8] I nonetheless consider the adjudication as no more than interlocutory.[9] *There can be no judgment when the court disposes of but a portion of the claim and leaves unresolved issues joined by the pleading.*[10]

> *Summary Judgment is whether there is any material dispute of fact as to the existence of deposits and total liabilities* of the Dill State Bank for which Ted A. Moss is entitled to be paid in the total amount of $90,136.76." (Emphasis added.)

**7.** See *supra* note 6.

**8.** I consider as problematic the following language quoted from the journal entry:
"IT IS NOW, THEREFORE, THE JUDGMENT AND ORDER OF THE COURT that *the Motion for Partial Summary Judgment* of Defendant, Ted A. Moss, *be and hereby is sustained and that he be awarded judgment in the total amount of $90,136.76. The award of costs and attorney['Js fees to [Moss] ..., as prevailing party, are deferred pending further application therefore by Defendant."* (Emphasis added.)

**9.** See *Hutchison v. Wilson,* 136 Okl. 67, 276 P. 198, 200 (1929), where the court recognized that "*though the language of the [trial] court took the form of a final judgment,*" the record clearly indicated that the judicial act was but an interlocutory order. (Emphasis added.)

**10.** 12 O.S.1981 § 681, *supra* note 2; *Reams v. Tulsa Cable Television, Inc., supra* note 4 at 374; *Oklahomans For Life, Inc. v. State Fair of Okl.,* Okl., 634 P.2d 704, 706 (1981); *Hurley v. Hurley,* 191 Okl. 194, 127 P.2d 147, 148 (1942) (the court's syllabus ¶ 3); *Foreman v. Riley,* 88 Okl. 75, 211 P. 495 (1923) (the court's syllabus ¶ 4); *Wells v. Shriver,* 81 Okl. 108, 197 P. 460 (1921) (the court's syllabus ¶ 2).

When construing the terms of an ambiguous order, this court will examine the four corners of the record before it to interpret the trial judge's decision.[11] *The order must not be construed as giving more relief than that which was intended or demanded.*[12] In light of the record before us, the trial judge could not have reasonably intended to give Moss a judgment, nor did the latter expect more than a summary disposition, far short of a judgment, of some issues in the case. *The court's opinion hence gives the trial court's decision a more sweeping effect than that sought by Moss and warranted by the record made below.*

*This appeal should be dismissed.* The nisi prius order, over which the court today takes reviewing cognizance, presents but a *nonappealable*, interlocutory summary adjudication.[13]

## III.

## EVEN IF THE DECISION AGAINST FDIC HAD DETERMINED MOSS' ENTIRE COUNTERCLAIM, THE ADJUDICATION WOULD STILL LACK THE ATTRIBUTES OF APPEALABILITY

*Assuming, arguendo, that the trial court intended to and did dispose of Moss' entire quest for relief in advance of adjudicating FDIC's claim against him, this appeal should nonetheless be dismissed for want of an appealable decision.* The issues joined by Moss' demand for setoff are *directly related to those raised by FDIC's yet unresolved claim.*[14] *"All interrelated claims must be decided before judgment will be deemed to have been rendered."*[15] A decision on Moss' setoff claim alone clearly cannot constitute a judgment.[16]

The very nature of setoff—whether asserted as a defense, counterclaim or cross-claim[17]—denotes a direct relationship with the opposing claim.[18] *It serves to reduce*

---

**11.** *Frazier v. Bryan Memorial Hosp. Authority,* Okl., 775 P.2d 281, 285–286 (1989).

**12.** *Frazier v. Bryan Memorial Hosp. Authority, supra* note 11 at 286.

**13.** FDIC has ample legal means to bar premature execution on Moss' "victory." If Moss were to attempt enforcing the adjudication in advance of judgment in the case, the trial court's power could be invoked to protect FDIC by quashing execution or by a general order that would define the ruling in his favor as not yet executable. If this failed, FDIC could seek prohibition to arrest all nisi prius enforcement process.

**14.** *See Eason Oil Co. v. Howard Engineering,* Okl., 755 P.2d 669, 670 (1988).

**15.** *Eason Oil Co. v. Howard Engineering, supra* note 14 at 672.

**16.** 12 O.S.1981 § 681, *supra* note 2; *Eason Oil Co. v. Howard Engineering, supra* note 14 at 672; *Dennis v. Lathrop,* 204 Okl. 684, 233 P.2d 969, 970 (1951); *Fowler v. City of Seminole,* 196 Okl. 167, 163 P.2d 526 (1945); *Hutchison v. Wilson, supra* note 9 at 200. See also *Fleming v. Baptist General Convention,* Okl., 742 P.2d 1087, 1107 (1987) (Opala, J., concurring in result).

**17.** Before the enactment of the present Pleading Code (12 O.S.Supp.1984 § 2001 et seq.), Oklahoma distinguished between a counterclaim and a demand for setoff (also known as a cross-

demand, *Board of Education of Town of Ringling v. State,* 172 Okl. 437, 46 P.2d 325, 327 (1935)). Counterclaims secured the defendant "full relief," *Mathews v. Sniggs,* 75 Okl. 108, 182 P. 703, 706 (1919), and had to arise out of the transaction or occurrence upon which the plaintiff's claim is based, *Perrault v. Holland,* Okl., 360 P.2d 240, 243 (1961). Setoff, which need not have been related to the basis of the plaintiff's claim, could be asserted as a defense, counterclaim or cross-claim based upon *any* contract with the opposing party, *Brown v. Holden, supra* note 3 at 533. In one case the party demanding setoff was not entitled to a judgment for any excess over the liability sought to be imposed by the initial claim. See *White v. Mitchell,* Okl., 279 P.2d 950, 953 (1955).

**18.** Repealed sections of Oklahoma's Code of Civil Procedure espoused the interrelationship that exists between setoff and the initial claim. See, e.g., 12 O.S.1981 § 273, *infra* (repealed in 1984), 12 O.S.1961 § 274, *infra* (repealed in 1965) and 12 O.S.1981 § 324, *infra* (repealed in 1984). These provisions were eliminated by our present Pleading Code, which no longer recognizes any of the earlier distinctions between setoff and counterclaim. See 12 O.S.Supp.1988 § 2013, *infra.* For cases illustrating those distinctions see *supra* note 17.

The pertinent terms of 12 O.S.1981 § 273 *provided:*
"* * * [E]ither party can plead and prove a setoff or counterclaim of the proper nature, in

*the liability sought to be imposed.*[19] *There hence can be no judgment until both the claim and the setoff are adjudicated.*[20] This would also be true if the

> *defense of the liability sought to be enforced* by the other party, and it shall not be necessary that such setoff shall exist as between all parties...." (Emphasis added.)

The terms of 12 O.S.1961 § 274 *provided:*

> "A *setoff can only be pleaded in an action founded on contract, and must be a cause of action arising upon contract* or ascertained by the decision of a court." (Emphasis added.)

The terms of 12 O.S.1981 § 324 *provided:*

> "In any action in which a recovery of money is sought *a defendant may setoff any cause of action for the recovery of money which he has at the time the answer is filed.* Where necessary to avoid delay or prejudice, the court may try the setoff separately." (Emphasis added.)

The pertinent terms of 12 O.S.Supp.1988 § 2013 *provide:*

> " * * * *
>
> "B. PERMISSIVE COUNTERCLAIMS; CONTINGENT COUNTERCLAIMS.
>
> "1. *A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.*
>
> " * * * *
>
> "C. COUNTERCLAIM EXCEEDING OPPOSING CLAIMS; STATUTES OF LIMITATION.
>
> "*A counterclaim may or may not diminish or defeat the recovery sought by the opposing party.* It may claim relief exceeding the amount or different in kind from that sought in the pleading of the opposing party. Where a counterclaim and the claim of the opposing party arise out of the same transaction or occurrence, the counterclaim shall not be barred by a statute of limitation notwithstanding that it was barred at the time the petition was filed, and *the counterclaimant shall not be precluded from recovering an affirmative judgment.* Where a counterclaim and the claim of the opposing party:
>
> 1. Do not arise out of the same transaction or occurrence;
>
> 2. Both claims are for money judgments;
>
> 3. Both claims had accrued before either was barred by a statute of limitation; and
>
> 4. The counterclaim is barred by a statute of limitation at the time that it is asserted, whether in an answer or an amended answer, *the counterclaim may be asserted only to reduce the opposing party's claim.*
>
> " * * * *" (Emphasis added.)

**19.** See the cases cited *supra* note 17.

**20.** See *Brandtjen & Kluge v. Hunter,* 235 Mo. App. 909, 145 S.W.2d 1009, 1014 (1940), where the court held that *when a setoff is pleaded it*

terms of 12 O.S.Supp.1990 § 1006(A)[21] had been in effect when the decision in this case was made. (Effective June 1, 1991,

> "*becomes part of a single controversy ... requiring only ... one judgment;*" *Baldwin v. Baldwin,* 37 Ohio L.Abs. 400, 47 N.E.2d 792, 793 (Ohio App.1940), which holds that *when a cross-demand is asserted "only one judgment is proper;" Kramer v. K.O. Lee & Son Co.,* 64 N.D. 84, 250 N.W. 373, 375 (1933), holding that when a counterclaim is interposed *"the judgment should fully determine" the parties' rights; Pennsylvania Co. For Insurances On Lives, Etc. v. Lynch,* 308 Pa. 23, 162 A. 157, 158 (1932), where the court observed that a defendant should have judgment on his counterclaim when it exceeds the plaintiff's *established demand.* These authorities are in harmony with our own statutes and cases.

See also 12 O.S.1981 § 699, *infra,* whose provisions, though repealed with the advent of the Pleading Code in 1984, *clearly mandated but a single judgment in an action in which a party pressed for setoff.*

The terms of 12 O.S.1981 § 699 provided:

> "If a counterclaim or setoff, established at the trial, exceed the plaintiff's claim so established, *judgment for the defendant must be given for the excess;* or *if it appear that the defendant is entitled to any affirmative relief, judgment shall be given therefor.*" (Emphasis added.)

*This language is entirely consistent with the definition of judgment in 12 O.S.1981 § 681, supra note 2, whose terms have been in effect since statehood.*

**21.** The terms of 12 O.S.Supp.1990 § 1006(A), now known as § 1006, provide:

> "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, *the court may direct the preparation and filing of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the filing of the judgment.* In the absence of such determination and direction, *any order or other form of decision, however designated, which adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the judgment adjudicating all the claims and the rights and liabilities of all the parties is filed with the court clerk.*" (Emphasis added.) Okl.Sess.L. 1991, ch. 251, § 18 at 1768.

Section 1006 is patterned after Rule 56(b), F.R.Civ.P.

subsection (A) is now § 1006. Okl.Sess.L. 1991, ch. 251 § 18 at 1768.) Section 1006 deals specifically with orders upon multiple claims. *It does not authorize the entry of a judgment when only some portions of an entire claim are determined,*[22] *nor does it sanction multiple judgments in an action where several claims are pressed.* In the absence of "an express determination that there is no just reason for delay and upon an express direction for the filing of judgment," *the adjudication of "one or more but fewer than all of the claims" in an action will not constitute a judgment.*[23] Section 1006 thus preserves the general rule—embodied in 12 O.S.1981 § 681 [24]—that a judgment must include the disposition of *all the claims pressed in an action* but allows *prejudgment* orders that dispose of an entire claim to be severed by the trial court for review in advance of judgment. In this manner our procedural regime protects against the unfairness that would arise if a judgment that is immediately executable were to be given a party on a setoff demand while the claim initially pressed against that party remained undecided.[25]

I would dismiss this appeal.

---

**22.** See *Tolson v. United States,* 732 F.2d 998, 1001 (D.C.Cir.1984).

**23.** See the text of § 1006, *supra* note 21.

**24.** For the terms of 12 O.S.1981 § 681 see *supra* note 2.

**25.** See *Fleming v. Baptist General Convention, supra* note 16 at 1107 (Opala, J., concurring in result).