POST OAK OIL COMPANY, an
Oklahoma Corporation,
Appellant,

v.

STACK & BARNES, P.C., an Oklahoma
Professional Corporation, and Joseph
R. Dancy, Esq., Appellees.

No. 81498.

Supreme Court of Oklahoma.

Feb. 20, 1996.

Rehearing Denied April 3, 1996.

Richard A. Shallcross, Brewster, Shallcross & De Angelis, Tulsa, for Appellant.

Murray E. Abowitz, Norman Lemonik, Abowitz, Welch & Rhodes, Oklahoma City, for Appellees.

SIMMS, Justice:

Post Oak Oil Company (Post Oak) appeals the summary judgment granted in favor of Joseph R. Dancy and Stack & Barnes, P.C., collectively referred to as Defendants. The Court of Appeals affirmed the judgment.

We granted certiorari to address Post Oak's claim that the Oklahoma courts currently use a subjective standard for legal malpractice instead of an objective "reasonable lawyer" standard. However, upon review, we find that the district court assumed as true certain facts which were disputed by the parties. Thus, summary judgment was improper. The opinion of the Court of Appeals is vacated, the judgment of the district court is reversed, and this cause is remanded.

### FACTS

Post Oak was the operator of an oil and gas well in Garvin County, Oklahoma, known as the Zab well. Numerous other persons owned working interests in the well and each had executed a joint operating agreement known as the 1982 Version of the American Association of Petroleum Landmen Model Form 610 Operating Agreement (JOA).

At all relevant times, the Zab well was producing oil and gas from the Hunton formation in paying quantities. However, Post Oak became aware that several nearby wells were producing oil and gas from the Sycamore formation which was located at a shallower depth than the Hunton formation. As operator of the Zab well, Post Oak thought that the nearby wells may be draining hydrocarbons from the Sycamore reservoir that was bypassed when the Zab well bore was drilled to the Hunton formation.

Allegedly concerned that it may be liable for failing to uphold its fiduciary duty to stop drainage, Post Oak proposed to all Zab working interest owners to shut-in the existing well and complete a new up-hole well in the Sycamore formation. Two of the working interest owners (who owned 46½% of all of the working interests) were against such action.

Being uncertain as to whether, under the terms of the JOA, it could shut-in the commercially-paying well and recomplete another one up-hole without first receiving consent from 100% of the working interest owners, Post Oak retained Dancy, an associate attorney employed by Stack & Barnes, for legal advice. Defendants assert Post Oak's representative, Dr. Bruce Bell, had earlier sought the same advice from two other unrelated attorneys who advised Post Oak that recompletion probably could not be accomplished absent consent of all working interests owners under the JOA. Defendants contend that Bell came to Dancy to "make the argument" that 100% consent is not required.

Nevertheless, Post Oak argues Dancy advised Bell that consent from 100% of working interest owners was not required under the JOA before recompletion could occur under the facts of the case. *Dancy denies giving such advice.* Allegedly relying on this advice, Post Oak shut-in the Zab well and completed a new well in the Sycamore formation which produced marginally.

Although *Dancy denies* it, Post Oak alleges that Dancy further advised Post Oak that the non-consenting owners were liable for the costs of such recompletion. Nevertheless, Dancy prepared lawsuits for Post Oak to file against each of the non-consenting working interest owners. Post Oak further asserts that Bell requested Dancy to consult with Robert Barnes, a senior partner at Stack & Barnes, about Dancy's advice on the interpretation of the JOA and on the lawsuits before proceeding with the recompletion or with the lawsuits. Post Oak also contends Bell instructed Dancy to coordinate the litigation with Post Oak's in-house counsel, George Williams. *Dancy did not comply*

*with these requests and denies ever receiving such instructions* from Bell. Post Oak's final complaint is that Dancy failed to inform Post Oak that he had never before tried a case to a judge or jury.

The working interest owners counter-sued Post Oak seeking punitive damages, and Bell requested a meeting with Barnes. Upon hearing of the events leading up to the meeting, Barnes advised Bell that Post Oak was in an untenable legal position. Barnes held the view that consent from all working interest owners was necessary under the JOA and that the non-consenting owners were not liable for the costs of recompletion. He suggested Post Oak settle the counterclaims of the working interest owners which Post Oak did by paying $260,000.00 in cash and forgiving indebtednesses of approximately $100,-000.00. Post Oak claims to have been damaged by Dancy's errant counsel and failure to abide by Bell's instructions regarding Barnes and Williams. Consequently, Post Oak brought this legal malpractice action against Defendants, Dancy and Stack & Barnes.

Defendants filed a motion for summary judgment to which Post Oak responded. *Defendants denied Dancy's advice was erroneous.* They argued, however, that even if it was erroneous advice, they are not liable because Dancy's advice was rendered in good faith relative to an unsettled question of law.

By letter, *the trial court overruled the motion on the grounds that facts were in dispute.* Defendants later moved the trial court to rehear the summary judgment motion pointing to a then newly-released Court of Appeals opinion to show the unsettled nature of the issue of law regarding whether an operator may shut-in a commercially-producing oil well without 100% agreement of the working interest owners.

The unpublished opinion, *Thomas N. Berry & Co. v. Samson Resources Co.*, No. 75,-817 (Okla.Ct.App.1993), has no precedential value. Nevertheless, Defendants insisted to the trial court that the opinion held that the 1982 Model Form 610 Joint Operating Agreement, the same form used by the parties in the case at bar, does not require the

consent of 100% of the working interest owners to complete another well at another formation through the same well bore as an already commercially-producing well. The Court of Appeals' holding was in accord with the advice allegedly given by Dancy on the same issue. Relying on this interpretation of the provisions of the JOA by that division of the Court of Appeals, Defendants convinced the trial court that they could not be liable for legal advice given in good faith on an unsettled question of law on which well-informed lawyers might reasonably disagree.

In granting summary judgment to Defendants, the trial court quoted *Wabaunsee v. Harris*, 610 P.2d 782 (Okla.1980), as the law applicable to the case. *Wabaunsee* holds:

    "An attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment or for a mistake in a point of law which has not been settled by the court of last resort in his State and on which reasonable doubt may be entertained by well-informed lawyers." 610 P.2d at 784.

Finding that "[a]s a matter of law, it cannot be said that [Dancy's] advice was correct and [Barnes' later advice] flawed or the first flawed and the second correct", the trial court ruled neither Dancy nor Stack & Barnes liable for giving the advice they gave.[1]

## SUMMARY JUDGMENT WAS IMPROPER

    Summary judgment is appropriate only where it appears that there is no substantial controversy as to any material fact and that one party is entitled to judgment as a matter of law. *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947 (Okla.1984); *Crockett v. McKenzie*, 867 P.2d 463 (Okla. 1994); *First State Bank v. Diamond Plastics Corp.*, 891 P.2d 1262 (Okla.1995). On review, all inferences and conclusions to be drawn from the underlying facts will be reviewed in

---

1. The parties agree that the question of law regarding the consent of working interest owners

under the JOA has never been decided by this Court.

the light most favorable to the party opposing the motion for summary judgment. *Daugherty, supra; Redwine v. Baptist Medical Center of Oklahoma, Inc.*, 679 P.2d 1293 (Okla.1983). On motion for summary judgment, the trial court may not weigh the supporting documents and deposition testimony, but may only review such documents and testimony to determine whether there is a factual dispute. *F.D.I.C. v. Moss*, 831 P.2d 613 (Okla.1991). Where issues remain unresolved or in dispute, summary judgment is improper. *Taylor v. Hynson*, 856 P.2d 278 (Okla.1993).

In ruling upon a summary judgment motion, the trial court cannot assume facts which are in dispute. If the trial court does assume facts as true which are disputed by the parties, then it puts the appellate court in the position of answering a hypothetical question. Answering that hypothetical question results in the issuing of an advisory opinion, something this Court does not do. *Graham v. Hudgins, Thompson, Ball & Assoc., Inc.*, 540 P.2d 1161 (Okla.1975); *Rogers v. Excise Bd. of Greer County*, 701 P.2d 754 (Okla.1984).

In order to grant summary judgment to the Defendants on the basis of Dancy's good faith in giving advice, the district court had to assume several facts to be true, to wit: (1) Dancy advised Post Oak that consent from 100 percent of the working interest owners was not necessary under the relevant JOA in order to shut-in the well and recomplete another well, (2) Dancy acted in good faith, (3) Dancy honestly believed that his advice and acts were well founded and in the best interest of his client, and (4) the unsettled question of law was one in which reasonable doubt may be entertained by well-informed lawyers. *See Wabaunsee, supra.* These facts were either in dispute or no evidence was given to support them.

In addition, other material facts are in controversy. Still at issue is whether Dancy failed to obey his client's instruction to consult with Barnes on the legal issue of working interest owners' consent and to consult with Barnes and coordinate with Williams in regards to the litigation against working interest owners. Also, whether Dancy failed to inform his client that he had never tried a case to a jury or judge, and whether either of these instances caused injury to Post Oak constituting professional negligence are questions left unresolved by the summary judgment.

Finally, we note the attorneys for the Defendants requested the trial court to assume that Dancy gave erroneous advice in good faith. By asking the trial court to make this assumption, the attorneys are telling the trial court to ignore the testimony of their client, Dancy. This is not a practice this Court should encourage.

For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED, the judgment of the district court is REVERSED, and this matter is REMANDED for further proceedings consistent with this opinion.

ALMA WILSON, C.J., and HARGRAVE, OPALA and WATT, JJ., concur.

KAUGER, V.C.J., and HODGES, LAVENDER and SUMMERS, JJ., concur in part, dissent in part.

KAUGER, Vice Chief Justice, with whom HODGES, LAVENDER and SUMMERS, Justices, join, concurring in part and dissenting in part:

I agree with much of the discussion of summary judgment. However, as the majority notes, certiorari was granted to address the standard for measuring legal malpractice. In *Wabaunsee v. Harris*, 610 P.2d 782, 784 (Okla.1980) we held that an error of judgment or a mistake in a point of law not settled by a court of last resort, and upon which there is some reasonable doubt, will not support an action for legal malpractice. The evidentiary materials in this case coupled with the current controlling precedent presents a question to me of whether there are any "material facts" at issue,[1] and if

---

1. Footnote # 1 of the majority opinion provides: "The parties agree that the question of law regarding the consent of working interest owners under the JOA has never been decided by this Court."

there can be any liability without overruling *Wabaunsee.*